Dr. I. Dodd Wilson, Chairman Arkansas Rural Medical Practice Student Loan and Scholarship Board 4301 W. Markham, Slot 550 Little Rock, Arkansas 72205-7199
Dear Dr. Wilson:
This is in response to your request for an opinion on whether the procedure the Arkansas Rural Medical Practice Student Loan and Scholarship Board intends to undertake in establishing priority among aspiring medical students who enter into rural medical practice student loan contracts is consistent with the provisions of Act 1114 of 1995.
It is my opinion that the answer to your question is generally "yes." It should be noted, however, that prior to the actual admittance to medical school of an alternate candidate who has entered into such a loan contract, the College of Medicine must meet the requirement of A.C.A. §6-64-406(b)(1), which requires that the first seventy percent of all enrollment positions for the freshman medical class be apportioned according to the population of the congressional districts. See A.C.A. §6-81-718 (c), as added by Act 114 of 1995.
You have noted that the newly enacted Act 1114 of 1995 provides in pertinent part as follows:
 (a)(1) If an alternate on the waiting list for acceptance to the College of Medicine demonstrates a willingness to enter into a rural medical practice loan contract and meets the requirements of 6-81-706, the applicant shall be moved to the top of the waiting list to a position just below alternates entering into community match contracts upon entering into a rural medical practice loan contract. The priority on the waiting list for those alternates who enter into a rural medical practice loan contract shall be determined by the date and time such alternate enters into the rural medical practice loan contract.
You indicate that the Board has advised all alternates that applications for the rural medical loan program will be accepted for consideration if received at the office of the Board on or before 5:00 p.m., June 17, 1995. The Board has further determined that all applications received by that deadline will then be ranked according to the priority of the alternates on the waiting list and will be considered by the Board in that order. The Board will meet on June 24, 1995 to interview applicants and following those interviews will determine which applicants meet the eligibility criteria and should be offered loan contracts. Following that determination, applicants will be notified whether or not they have been approved for the loan. The applicants who have been approved for a loan will be advised to appear at a definite time and place to sign their loan contracts. The contracts will be signed in the same order the applications were considered by the Board and therefore the order in which the contracts will be signed will be determined by the ranking of the applicants on the waiting list.
Prior to admitting any rural loan applicants from the alternate list, the College of Medicine intends to designate a number of positions on the alternate list (not more than ten as required by Act 1114 of 1995) available to these applicants. The applicants who have entered into loan contracts will then be placed on the waiting list in accordance with their priority and the number of available positions so designated by the College of Medicine. In the event, prior to admission, an applicant who has contracted for the rural medical practice loan program should withdraw from the alternate list, the position of such alternate will be filled by the next highest alternate who has entered into a rural medical practice student loan contract.
You have illustrated the above procedure by the following example: Assume twelve alternates make application for a rural medical loan. Their applications will be considered by the Board in their priority on the alternate list. Assume that all twelve applicants are approved for loans and on definite dates and times sign their contracts, one after the other, in the same order they were considered by the Board. If the College of Medicine designates ten positions on the waiting list to be filled by these alternates they will be ranked in accordance with the date and time they signed their contracts. Because only ten places may be designated for this program, two of these alternates will not advance on the waiting list. In the event one of these ten alternates should withdraw, the remaining alternates in this category will advance on the list and one of the two remaining alternates who has signed a rural medical practice loan contract will be moved to the last place on the list in this category.
It is my opinion that the above procedure is consistent with the statutes and with Act 1114 of 1995. As noted above, however, the College of Medicine must comply with the congressional district apportionment requirements of A.C.A. § 6-64-406(b)(1) prior to actually admitting any of these alternates.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:ECW/cyh